Sanborn, Circuit Judge,
(after stating the facts.) In the determination of this case it has been necessary to decide but a single question, and that is: When a cause of action for the negligent killing of a deceased person is given by statute to his heirs at law for the exclusive benefit of his widow and next of kin, can the widow or any one of the heirs at law maintain the action without joining other heirs who are in existence, and entitled to a share of the amount recovered? The contention of the defendant that the words “ heirs at law ” in this statute do not *373 include the widow, and hence that she may not be a party to this action, cannot be sustained. It is true that at common law the technical meaning of the term “heir at law ” is one upon whom the law casts an estate in real property immediately upon the death of the ancestor intestate; but, in view of the facts that under the statutes of Arkansas the inheritors of the real estate also inherit the personal estate in the same proportions, (section 2522, Mansf. Dig.;) that the widow receives a larger share in the personal than in the real property, (sections 2571, 2591, 2592, Mansf. Dig.;) that, if there are no children or their descendants, father, mother, nor their descendants, or any paternal or maternal kindred, capable of inheriting, the whole estate of the deceased husband descends to her by operation of law, (section 2528, Mansf. Dig.,) (and in the latter case, if the widow could not maintain the suit, there would be no heir at law to bring it, although the widow would be entitled to the entire amount to be recovered;) and the further fact that the evident purpose of the statute in question in permitting the action to be brought by the heirs at law when there were no personal representatives of the deceased was to give the action in that event to .those beneficially interested,—we are constrained to hold that these words in this statute were intended to have a broader signification; that they were used in contradistinction to devisees, and include all those entitled to a share in the distribution of the personal estate of persons dying intestate, under the Arkansas statute.
The question then recurs, can one of these heirs at law maintain this action without joining others in being, who are entitled to a share of the amount recovered ? The statute in question was passed March 6, 1883. At common law no one could maintain an action for the negligent killing of a deceased person, and, in the absence of this or some similar statute, this action could not be maintained. Railway Co. v. Barker, 33 Ark. 353; Wood v. Blackwood, 41 Ark. 299; Nash v. Tousley, 28 Minn. 5, 8 N. W. Rep. 875; Wilson v. Bumstead, 12 Neb. 3, 10 N. W. Rep. 411. Since the right of action and the remedy for the wrongful killing exist only by virtue of the statute, they exist for the benefit of the persons there specified, and of such persons only; and where, as in this case, such a statute expressly specifies the parties who may bring the action, those parties, and those parties only, can maintain it. Thus in Nash v. Tousley, supra, where the statutes of Minnesota provided that “where death is caused by the wrongful act or omission of any party, the personal representative of the deceased may maintain an action, * * * and the amount recovered is to be for the exclusive benefit of the widow and next of kin, to be distributed to them in the same proportions as the personal property of the deceased person,” an action brought by a father for the negligent, killing of his son was dismissed, and it was held that such an action could be maintained only by the executor or administrator of the son’s estate. To the same effect are Wilson v. Bumstead, 12 Neb. 1, 10 N. W. Rep. 411; Miller v. Railway Co., 55 Ga. 144; Books v. Danville, 95 Pa. St. 159, 166; Woodward v. Railway Co., 23 Wis. 404; Kramer v. Railway Co., 25 Cal. 436; *374 Needham v. Railway Co., 38 Vt. 304; Hulbert v. City of Topeka, 34 Fed. Rep. 510. The first section of this statute provides that the person or corporation whose wrongful act, neglect, or default causes the death of a person shall be liable to an action in all cases where he or it would have been liable to the person killed if the injury had not resulted in death. The second section provides that every such action shall be brought by and in the name of the personal representatives of such deceased person, and, if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; that the amount recovered shall be for the exclusive benefit of the widow and next of kin, shall be distributed to them in the proportions provided by law for the distribution of the personal property of persons dying intestate; and that the jury may give such damages as they shall deem a fair and just compensation for the pecuniary injuries resulting from such death to the widow and next of kin.
Obviously the purpose of the legislature was to provide for the recovery in one action of a single amount, which should, as nearly as possible, equal the aggregate amount of pecuniary loss the widow and next of kin sustained. The statute does not provide, and nothing in it evinces any intention to provide, that each of the heirs shall receive by a separate action, or by distribution of the amount recovered in a single action, such an amount as will reimburse him for the pecuniary loss which he has sustained from the death. On the other hand, it does provide that the amount shall be distributed to the same persons, and in the same proportions, as the personal estates of intestates are distributed, although it is perfectly obvious that under this provision it must often happen that the distribution will give large shares to those who suffer little pecuniary loss, and inadequate compensation to those who are grievously injured. Thus, in the case at bar, it is alleged that the half-brother, who is the next of kin to deceased, suffered no pecuniary loss by his death, while the widow, who brings this action, was dependent upon him for support, and suffered all the pecuniary loss sustained by any one; nevertheless, under this statute, the half-brother is entitled to one half of the amount recovered in the action, since it is provided by the statutes of Arkansas that the personal property of the intestate shall, in such a ease, be distributed in this proportion. In other words, no one of the beneficiaries named in the statute is entitled to measure his recovery by the pecuniary loss hehas suffered, buthemust take thatshare of the aggregate amount recovered for the pecuniary injury to the widow and next of kin which the statute would give him in the personal estate of the deceased dying intestate. From these provisions of the statuté, from the basis of distribution there fixed, it clearly appears that none of the heirs is given a separate action, or a separable interest in the action, against the wrong-doer, until after the judgment is recovered, but that all are jointly interested in the cause of action until distribution of the proceeds is adjudged. In this case the half-brother had a joint and equal interest with the plaintiff in the action and the recovery, and it is well settled that when the action is for the as ser *375 tion of a joint, and not a several, interest, all persons having an interest in the subject of the action or the relief demanded must be joined.
Any other rule would lead to endless confusion, and great injustice. Suppose, in a case arising under this statute, there are 20 heirs entitled to share the personal estate in proportions varying from one twentieth to one third, and that each may maintain a separate action for the wrongful killing of a deceased person. The aggregate damages to the widow and next of kin must, in reality, be the same in each case, but how the estimates of 20 juries would differ. The amount recovered in each case must be distributed among the 20 heirs in the same proportions, and 20 trials must be endured to determine the rights of these litigants. No such practice or result was intended by the legislature or provided for by this statute. It gives “an action”—a single action, not several actions—for the wrongful killing. It provides that every such action must be brought in the name of the personal representatives, if there'are such; otherwise by the heirs at law. It will not be gravely insisted that the personal representatives could maintain more than a single action, or that, where there were several administrators, one of them could maintain the action without joining all; and it is equally clear that when the action is brought by the heirs there must be but a single action, and all the heirs must be made parties to it, so that the entire controversy may be determined and the entire amount recovered and distributed in the single action given by the statute. The simplicity and effectiveness of such an action, the inconvenience and injustice to plaintiffs and defendants alike resulting from any other practice, the rule of distribution of the amount recovered, based, not on the injury to each person entitled to receive a share, but upon the statute of descent, the settled rule of law as to parties jointly interested in a cause of action, and the plain reading of the statute, compel the conclusion that such was the intention of the legislature, and that the court below erred in proceeding to the trial of this action in the absence of the half-brother as a party thereto.
That the statutes of Arkansas provide that “every action must be brought in the name of the real party in interest, except as provided in sections 4935, 4936, and 4938,” (Mansf. Dig. § 4933,) in no way militates against this conclusion, because, as we have shown, the half-brother, though he may have' suffered no pecuniary loss, was entitled to one half of the amount recovered, and therefore was a real party in interest; and because section 4936 expressly provides that a trustee of an express trust, or any person expressly authorized by statute so to do, may bring an action without joining the -real parties in interest, and by the act of 1883 (section 5226, Mansf. Dig.) the heirs of the person wrongfully killed are expressly authorized to bring this action.
The contention that the action on behalf of the half-brother, though he was a minor, was barred by the limitation contained in the act of 1883 before the answer in this action was filed, will not now be considered, because the question on which this case turns was fairly presented by the demurrer to the complaint within the two-years limitation pre *376 scribed by that statute, was renewed and insisted upon by the second defense set forth in the answer and throughout the trial, and ought not to be disregarded now; and for the further reason that any opinion we might now express as to the effect of this limitation on the rights of this half-brother would not bind him, (since he is not in court,) and ought not to be formed or expressed' until he is heard. The result is that, where an action that had no existence at common law is given by statute to the heirs at law of a deceased person for a wrongful act for the benefit of the widow and next of kin, all the heirs at law are indispensable parties to the maintenance of the action.
In view of the fact that there may be another trial of this case, we (notice another error assigned. It is that the court below gave the following instruction to the jury:
“If the jury find that the death of the husband of plaintiff was caused by "the negligent acts of the defendant, as defined in these instructions, then they will return a verdict for plaintiff for such sum as will compensate her as widow of said deceased for the pecuniary injury which she has sustained by the death of her said husband. To ascertain this, the jury will consider the probable duration of the life of deceased had his death not been caused at the "time it was, as well as the probable duration of the life of plaintiff, and for this purpose reference may be had to the tables introduced in evidence, not as absolute guides on the subject, but as important and authentic information on this point, to be considered with the other evidence in the case in reaching a conclusion on this point; the habits of the deceased with reference to his attention to business, and his sobriety, and in other respects which would affect his capacity for earning money; his probable earnings, and the amount that he would have probably devoted to the support and maintenance of plaintiff. When this is ascertained, you will allow plaintiff such sum, not to exceed the probable earnings of deceased, nor the amount named in the complaint, as will purchase an annuity for such sum as will yield annually during the term of the expectancy of deceased an amount equal to the annual value of the pecuniary benefits that plaintiff would have received from her said husband during said term. But if the jury find that the probable duration of plaintiff’s life is shorter than that of her said husband, then she should only be allowed such sum as will equal the value of the benefits she would have received during the term of her life. And if the jury believe that plaintiff’s expectancy of life is greater than that of her said husband, then they will add such additional sums as will equal the present value of any property that she would probably receive from her said husband as dower in the event she should so survive him, provided the jury find that the said deceased would have accumulated any such property in excess of what was required for the support and maintenance of himself and family. In plaintiff’s case the amount of such dower interest would be one half of any personal property and a life estate in one half of any realty which her husband would own at his death if no children survived him; and, if he left children, her interest would be one third instead of one half.”
Aside from the palpable errors arising from the unsuccessful attempt to divide the cause of action given by the statute, one vice of this instruction is that it positively directs the jury to measure the plaintiff’s damages by a mathematical calculation, based upon the yielding power of money when invested in an annuity. It was undoubtedly proper for the jury to consider under the evidence what amount of money so in *377 vested would yield the yearly amount the widow and next of kin would probably have received from the deceased if he had lived, but they were not bound to allow damages based upon that method, nor any particular method of investment of money. It would be proper for a jury, upon proper evidence, to consider what amount invested in government bonds, well-secured mortgages on real estate, or any other safe security, would yield the annual amount the injured parties would probably have received from the deceased had he lived; but it would not be the province of the court to direct them to allow an amount based upon any one of these methods of investment. Indeed, if, after considering all of the evidence, they found difficulty in arriving at a conclusion by mathematical calculations based on any method of investment, they would be authorized to estimate the loss according to their own good sense and sound judgment. Phillips v. Railway Co., 49 Law J. Q. B. 237, 238,5 C. P. Div. 291, 293; Rowley v. Railway Co., 42 Law J. Exch. 153, L. R. 8 Exch. 221; Railway Co. v. Putnam, 118 U. S. 545,556, 7 Sup. Ct. Rep. 1; Railroad Co. v. Barron, 5 Wall. 90, 105.
The same vice runs through that portion of this instruction where the jury was directed, in case they believed plaintiff’s expectancy of life was greater than that of her husband, to add to the amount that would purchase the annuity referred to the present value of any property that she would probably have received from her said husband as dower if he had not been killed. At the death of the husband the plaintiff was 20 years old, and her expectancy of life, according to the tables, was 41.53 years, while her husband was 22 years old, and his expectancy of life was 40.85 years. He was a fireman, earning $75 or $80 a month, and the expenses of his household during his lifetime had consumed all his wages. Under this evidence, so many chances and contingencies of life and death, of sickness and health, of accident and injury, of marriage and divorce, of the birth and rearing of children, conditioned the lives and relations of this husband and wife that no court was authorized to instruct the jury that they must allow the widow one third or one half of the present value of the husband’s probable future accumulations if they were of the opinion she would probably have outlived him if he had not been killed. In the measure of damages in such an action as this the constant factor is the practical knowledge, varied experience, and sound judgment of 12 men, and to these very much must be left. The instruction we are considering was given at the request of plaintiff’s counsel. It is true that, after giving it, the court, of its own motion, added the following:
“However, gentlemen of the jury, the whole matter of the amount which the plaintiff is entitled to recover as damages for the death of her husband, if you find his death was caused by the negligence of defendant, as stated in these instructions, is, in the end, left entirely to your sound judgment as to what is proper to lie allowed, after taking into consideration all of the facts and circumstances of the case as shown in the testimony.”
This particular portion of the charge, standing alone, is not objectionable; but general remarks of this character in the course of a charge, *378 while they may tend to show that the court really entertains sound views of the law, do not extract the vice of an erroneous instruction, positive in its terms, which directs the jury to allow damages on a wrong basis.
The error into which the zeal and ingenuity of counsel led the court and himself resulted from a futile endeavor to make fixed and certain that which is in its nature uncertain and indefinite. The evidence in' such a case presents so many facts and circumstances to be considered,— the chances and contingencies of temporary and permanent illness, of accident, injury, and disability, familiar to the experience of every juryman, and proper to be considered in estimating the probable future income of any man, but sometimes incapable of proof, are so many and so varied,—that human ingenuity seems incapable of formulating a rule which shall specify every circumstance, chance, and probability that a jury may consider,- and none that it may not, in estimating the earnings his death has deprived his family of; but when to the facts and circumstances, to the chances and contingencies that condition the probable earnings of one individual for a series of years, are added those that measure the probability of the continuance of the domestic relations, the probability of the duration of the life of the wife, of the birth and lives of children, of the continued affection and support of the husband, of the continuance of the lives and relations of the next of kin, the establishment of any rule that will enable a jury by any arithmetical computation to arrive at absolute compensation to the widow and next of kin for their pecuniary loss is hopeless.
When, in this case, the court, after cautioning the jury that the only damages that can be allowed are such as will fairly compensate the widow and next of kin for the pecuniary loss they have sustained by the death; that nothing can be allowed for the pain or suffering of the deceased, or the grief or distress of any one; and, calling their attention to the salient points of the testimony, and some of the chances and contingencies that encompassed the lives, relations, and probabilities that must be considered in this case in such way as, in its opinion, will best elucidate the testimony, and tend to assist the jury in arriving at a just result, informs them that they may consider all the facts and circumstances in evidence, and the proximate chances and contingencies that the evidence and their experience of the lives and affairs of men show would intimately affect the probable amount of pecuniary loss the widow and next of kin have sustained; and then instructs them that, after careful and deliberate consideration of all these matters, it is their province and duty, in the light of their knowledge and experience, to fix the amount plaintiffs are entitled to recover (if they find they are entitled to recover at all) at such a sum as, in the exercise of their good sense and careful, deliberate judgment, they deem a fair and just compensation for the pecuniary injuries resulting to the widow and next of kin from this death,—it is probable that the court will have given the jury as definite a rule for the measure of these damages as will be of service to them or to the due administration of the law. This is the established practice in England. The reasons for it are forcibly pre *379 sented by Lord Justice Brett in Phillips v. Railway Co., at pages 237, 238, 49 Law J. Q. B., and at pages 291, 293, 5 C. P. Div., and this practice and the reasoning of Lord Justice Brett in support of it are commended and approved by the supreme court in Railway Co. v. Putnam, 118 U. S., at pages 554, 555, 7 Sup. Ct. Rep. 1; and by the supreme court of Arkansas in Fordyce v. McCants, 51 Ark. 514, 11 S. W. Rep. 694.
The judgment below is reversed, with costs, and the cause remanded, with instructions to dismiss the action unless within a reasonable time, to be fixed by the court below, the half-brother named in the complaint be made a party to the action, and in that event to grant a new trial.