[No. 4408.]

THE DENVER & RIO GRANDE RAILROAD COMPANY ET AL.
v. GUNNING.

1. **Negligence—Railroads—Death of Passenger—Evidence—Identity.**

In an action against a railroad company for the death of a passenger caused in a wreck, where the body of deceased was so badly burned that it could not be identified, the admission of incompetent testimony to show that deceased was a passenger on the wrecked train was not prejudicial and reversible error, where there was other competent evidence unobjected to sufficient to conclusively show that deceased was a passenger on the train and the incompetent evidence could not have changed the result on the issue under consideration.

2. **Same.**

In an action against a railroad company for the death of a passenger caused in a wreck, where the body was so badly burned that it could not be identified, evidence examined and held sufficient to show that deceased was killed in the wreck.

3. **Negligence—Directing Jury.**

In an action for damages against a railroad company for the death of a passenger, where undisputed competent testimony clearly established that the death was caused by defendant's negligence, it was not error to instruct the jury to return a verdict for plaintiff and submit to them only the question of the amount of damages to be awarded.

4. **Damages—Death by Negligence—Instructions.**

In an action by a husband for damages for the death of his wife, where the court by its instructions had clearly limited the award of damages to the pecuniary loss, and had fully instructed the jury as to the elements to be considered by them in making

their award, a further instruction to the effect that they were permitted to determine the question of damages from their own observation, experience and knowledge conscientiously applied to the facts and circumstances of the case, was not error.

5. Husband and Wife—Death by Negligence—Damages.

In an action by a husband for damages for the death of his wife, where the testimony showed that deceased was 23 years old, intelligent, cultured, frugal and industrious, and a devoted wife, and that she had been earning about $400 per year with which she had purchased supplies for their home, held that an award of $4,000.00 damages was not excessive.

6. Railroads — Receivers — Foreclosure — Death of Passenger—Parties.

Where a passenger on a railroad was killed after a foreclosure sale of the road, but before the sale had been consummated and while the road was still being operated by a receiver, and the decree of foreclosure provided that the purchasers should take the property upon condition that they should pay all indebtedness, obligations or liabilities legally contracted or incurred by the receiver before the delivery of possession, to the extent that the assets or proceeds in the hands of the receiver were insufficient for that purpose, and the property was conveyed to the purchaser and the receiver was discharged under an order which provided that the discharge should not operate to prevent the prosecution in the name of the receiver of any suit then pending, or from defending any suit then pending or which might thereafter be brought against him as such receiver, the receiver and purchaser were both proper parties defendant to an action for damages for the death of such passenger brought after the discharge of such receiver, but within the time limited for bringing such actions.

7. Same.

Where a foreclosure sale of a railroad was made conditioned that the purchaser should pay all indebtedness, obligations or liabilities legally contracted or incurred by the receiver, to the extent that the assets or proceeds in the hands of the receiver were insufficient for that purpose, it was not a misjoinder, either of parties or causes of action, to join such purchaser as a codefendant with the receiver in an action of tort for damages for the death of a passenger caused by a wreck on the railroad while it was being operated by the receiver.

8. Railroads — Receivers — Foreclosure Sales—Jurisdiction—Action Against Purchaser.

Where the purchaser of a railroad at a foreclosure sale under

a decree of the federal court assumed the liabilities incurred by the receiver while operating the road, the state district court has jurisdiction of an action against such purchaser for damages for the death of a passenger, caused by a wreck on the railroad while being operated by the receiver.

*Appeal from the District Court of Arapahoe County: Hon. Frank T. Johnson, Judge.*

Appellee, as plaintiff, brought an action against appellants, as defendants, to recover damages for the alleged negligence of the defendants in causing the death of his wife. From a judgment in his favor the defendants appeal. The facts necessary to consider, appear in the opinion.

Messrs. ROGERS, CUTHBERT & ELLIS and Mr. PIERPONT FULLER, for appellants.

Messrs. RICKEL & CROCKER and Messrs. STUART & MURRAY, for appellee.

CHIEF JUSTICE GABBERT delivered the opinion of the court:

Shortly after midnight, and on the morning of September 10, 1897, near New Castle, Colorado, a collision occurred between the west-bound passenger train operated by The Denver & Rio Grande Railroad Company, and an east-bound freight train operated by the receiver of The Colorado Midland Railroad Company, which resulted in the death of a number of passengers riding on the passenger train. Several of the coaches were consumed, and a number of bodies burned. The plaintiff claims that his wife was a passenger and killed in this wreck, either by the impact, or the result of the fire. What was claimed to be her remains was so badly burned that identification from the remains itself was impossible. At the close of the testimony the court directed a verdict for plaintiff, submitting to the jury only the amount

of damages to be awarded.  Error is assigned on this action.  One of the litigated questions of fact is, whether or not the remains of plaintiff's wife was found in the wreck.

The first point we shall consider is the claim on the part of counsel for appellants, that incompetent testimony was admitted to establish that Mrs. Gunning was a passenger on the wrecked train at the time of the collision.  We do not believe it is necessary to enter into a discussion of the testimony which it is claimed was incompetent, or pass upon the question as to whether it was or was not admissible, because that which is not objected to, is undisputed, and which is clearly competent, leads irresistibly to the conclusion that Mrs. Gunning was killed in the wreck.

It appears that Mrs. Gunning was a young woman, about twenty-three years of age, and had been married something over a year, and for some time previous to leaving for Colorado had been living with her parents at, or near, Cedar Rapids, Iowa. Her husband was located at Ouray, and she left her parents' home with the intention of joining her husband at that point, where they intended to establish a home.  She had purchased considerable household supplies, and shipped to Ouray previous to her departure for Colorado.  On September 7, 1897, she purchased a ticket routed to Grand Junction over the B., C. R. & N., Rock Island, and D. & R. G. railroads. This fact is established by the testimony of the ticket agent at Cedar Rapids.  She took the train on the evening of the date the ticket was purchased, her father, mother and several friends accompanying her to the depot and upon the train.  These persons testified as to her appearance, dress, and what she carried as baggage, particularly a grip slung across her shoulder, an easel, a basket of lunch, a small box,

and a cape. When she started on this trip she carried a watch given her by her father and mother as a birthday present, and also was wearing finger rings, one of which was a diamond given her by her husband. After the train on which she was proceeding west left Kansas City, she became acquainted, the next morning, with a gentleman, who rode with her on that train to Denver, which point they reached the morning of September 9. He describes her appearance, dress, and belongings, which substantially correspond with the testimony given by the father and mother on these subjects. He says that she had a gold watch, and handbag with a long strap over her shoulder, a well-filled lunch basket, and a large easel. He assisted her to change trains at Denver, and accompanied her on the same train as far as Salida. They rode in the first car back of the smoker, which was an ordinary day coach. At Salida he left the train, and the lady whom he described continued on west. He identified a photograph of Mrs. Gunning as the person with whom he rode on the train from Kansas City to Salida. A lady and her son who were passengers on this same train from Denver to Salida, describe a passenger corresponding to Mrs. Gunning, and the lady particularly recalls the fact that this person had an easel and wore a diamond ring. These witnesses identified a photograph of Mrs. Gunning showed to them as the photograph of the person whom they describe as having seen on the train. They also state that she was on the train going west when it left Salida. The conductor of the passenger train between Salida and Grand Junction identified the coupon taken up by him, which, according to the marks, had been sold to Mrs. Gunning at Cedar Rapids. The coroner and another physician visited the scene of the wreck a few hours after the collision. The coroner in his official capacity

superintended the recovery of the dead bodies, and took charge of the watches and jewelry found with the bodies. He testified that he found the trunks of two female bodies in the space occupied by the two coaches, immediately in the rear of the smoker; that upon the body of one, an adult, he found a watch; that the cloth upon this body was not so badly burned but that its texture could be identified, and his statements as to the character of its texture correspond with the description of the clothing worn by Mrs. Gunning as testified to by her mother. In the ashes under where the two bodies lay a diamond-set ring was also found by an assistant in his presence. He sent this watch and ring to the general passenger agent of the Rio Grande road, who afterwards turned them over to the plaintiff. The testimony as to the finding of the watch and jewelry is corroborated in all particulars by the physician who assisted the coroner. The husband testified to having received the watch and ring from the general passenger agent of the Rio Grande road, and identified them as the watch and ring of his wife. He afterwards delivered them to Mrs. Gunning's parents, who, also, identified them as the watch and ring worn by their daughter when she left for Ouray.

It further appears from the testimony that her relations with her parents were of the most cordial nature; that when she left home she was in the best of spirits, and that there was not the slightest trouble between her and her husband. She has never been heard from since the time of the wreck.

It appears to us that this testimony establishes, beyond all question, the identity of the remains found in the wreck as those of Mrs. Gunning. The description of the witnesses who met her on the train between Kansas City and Salida, substantially agrees with that of her father and mother. Her belongings, such

as an easel and other articles she carried, are described by these same witnesses; the coupon cf the ticket which she purchased, taken up by the conductor of the ill-fated train, the finding of a watch and ring on and near the body of an adult female, which, from the description, were undoubtedly the watch and ring she had on when she left Cedar Rapids, in connection with the fact that she has never been heard from by either parents or husband, it seems to us, so conclusively settled the fact that she was killed in the wreck that further comment on this proposition is hardly necessary. Whether or not testimony was introduced on the part of the plaintiff for the purpose of establishing the fact that she was on the train at the time of the collision, was incompetent, is not a matter of which the defendants can complain, because the reception of such testimony is not reversible error when it is manifest that it could not have changed the result on the issue under consideration. There can be no doubt from the uncontroverted testimony but that the negligence of defendants was the cause of the collision. When undisputed, competent testimony in a civil action clearly establishes facts in issue, it is not error for the court to assume such facts proven, and direct the jury accordingly.

The jury returned a verdict for four thousand dollars, and counsel for appellants claim that the sum awarded was excessive. The court instructed the jury to the effect that it was difficult to adduce direct evidence of the exact pecuniary loss occasioned the plaintiff by the death of his wife, or to show the exact value of her services, and that they were permitted to determine the question of damages from their own observation, experience and knowledge conscientiously applied to the facts and circumstances of the case. This instruction is also assigned as error. The court had previously instructed the jury that in

awarding damages they must consider the age, health, condition of life, and probable duration of the life of the deceased, her habits of industry and frugality, her mental and physical capacity to render services, her ability to earn money, and her disposition to aid or assist the plaintiff, but that the recovery allowable was in no sense a solace for the grief or injured feelings of plaintiff, occasioned by the death of his wife, but must be limited to the net pecuniary benefit which the plaintiff might reasonably have expected to receive from a continuance of the life of the deceased, and that this pecuniary benefit would be the value of the wife's services less the cost of properly and suitably maintaining her. The testimony discloses that Mrs. Gunning was about twenty-three years of age, that her expectancy was a little over forty years; that since her marriage she had been earning something like four hundred dollars per annum; that from her earnings she had purchased supplies for their intended home in Ouray; that she was intelligent and cultured, frugal and industrious, and a devoted wife. Damages can only be awarded for the pecuniary loss resulting to the living party entitled to sue, which is occasioned by the death of the deceased. The ascertainment of damages in cases of this character depends upon a variety of circumstances and future contingencies, and the award of a jury should not be disturbed if it appears there is a substantial basis of facts upon which to predicate a finding of substantial pecuniary loss. Such loss cannot be determined with mathematical exactness. The chances and contingencies of life and death, of sickness and health, of accident and injury, in the future would be such that it would be impossible for the jury to determine the exact pecuniary loss to the plaintiff, or the court to formulate any arbitrary rule for their guidance in determining the damages to be awarded. The ser-

vices of a wife to the husband are not bestowed for pecuniary consideration, and yet the husband is entitled to compensation in money for their loss. What she might earn per annum would be a proper element to consider, but not the only one.   In many ways the wife renders services which no witness can clearly define, enumerate or estimate the value of, with any degree of exactness.   Necessarily, then, in determining the amount of damages in cases of this character, where future contingencies and a variety of circumstances must be taken into consideration, the award must be left to turn mainly upon the sound sense and deliberate judgment of the jury. Their own observation, experience and knowledge respecting these matters, conscientiously applied to the facts and circumstances of the case, would be important for them to consider in determining the amount of the award, and it is not error to so instruct.   We are of the opinion that the testimony in the case fully sustains the amount of the damages awarded.—*Pierce v. Connors,* 20 Colo. 178; *Denver, S. P. & P. Ry. Co. v. Wilson,* 12 Colo. 20; *U. P. Ry. Co. v. Jones,* 21 Colo. 340; *Denver Tramway Co. v. Riley,* 14 Colo. App. 132; *Ry. Co. v. Barron,* 5 Wall. 90; *St. L., I. M. & S. Ry. Co. v. Needham,* 52 Fed. 371.

On behalf of the receiver it is claimed that he was discharged prior to the trial of the cause, and that The Colorado Midland Railway Company is not liable for plaintiff's claim, and was improperly joined as a defendant.   At the time of the collision the property of The Colorado Midland Railroad Company was being operated by the receiver.   A decree of foreclosure against the property had been entered in the federal court and the property sold thereunder, but the sale was not consummated until later.   The decree of foreclosure provided that the purchasers at

the sale thereunder should take the property and receive a deed therefor upon the express condition that they should pay, satisfy and discharge all indebtedness or obligations or liabilities legally contracted or incurred by the receiver before the delivery of the possession of the property sold to the extent that the assets or proceeds in the hands of the receiver were insufficient for that purpose. The decree was further conditioned as to the payment of such indebtedness on the part of the purchasers that suits should be brought to enforce the same within the period allowed by the statute of limitations of the state. By the terms of the decree jurisdiction was retained by the court for the purposes of enforcing its provisions, and the right to retake and resell the property in case the purchasers neglected to comply with the order of the court, was reserved. The property was conveyed to The Colorado Midland Railway Company in accordance with the terms and conditions of this decree. The order under which the receiver claimed to have been discharged, recited:

"It is further ordered that the discharge of the said receiver shall not operate to prevent the prosecution in the name of the said receiver of any suit instituted by him as such receiver and still undetermined, nor any appeal heretofore taken, or which hereafter may be taken by him as such receiver, nor shall it operate to prevent him from defending, as may be necessary, any suit brought against him as such receiver, and still undetermined, or any suit that may hereafter be brought against him as such receiver."

Counsel for the receiver insist that this action could not be maintained against him because, when the property over which he had control passed from his hands, in pursuance of the orders of the court, he was discharged from his trust, and his official liabil-

ity ended with the termination of his official exist-
ence. This proposition is not applicable. It is clear
from the decree and orders of the court, to which
we have referred, that the receiver was only dis-
charged conditionally. The property had passed
from his hands to a purchaser, but upon the express
condition that the legal liabilities incurred by him
should be discharged by such purchaser. Evidently,
it was known to the court that actions were pending,
or obligations existed upon which suit might be
brought, and that is why the decree respecting his
discharge provided that it should not prevent him
from defending actions then pending, or which might
thereafter be brought. The court retained jurisdic-
tion for the purpose of enforcing its orders against
the purchaser for the payment of the indebtedness of
the receiver, with authority in the receiver to defend
actions brought against him in his official capacity;
so that, for the purposes of this action, he was still to
be regarded as the receiver of The Colorado Midland
Railroad Company, and he still had the power under
the decrees to which we have referred, to satisfy the
claim of plaintiff, when reduced to judgment, out of
the property of the railroad company.

There can be no doubt regarding the liability of
The Colorado Midland Railway Company to the
plaintiff, because, by the terms of its purchase of the
property of The Colorado Midland Railroad Com-
pany, it assumed this liability. The only question
presented is, whether or not it could be joined as a
defendant in this action. Counsel for appellants
claim it could not, because the action against the other
defendants was one in tort, while that against the
railway company was in contract. Our Civil Code,
section 11, provides that: "Any person may be made
a defendant who has, or claims, an interest in the con-
troversy adverse to the plaintiff, or who is a necessary

party to a complete determination or settlement of the question involved therein.''

The receiver, in his official capacity, is liable for the tort which is the basis of plaintiff's action. Plaintiff's judgment against him can only be satisfied out of the property under the control of the receiver. This property has been conditionally conveyed to the railway company. Its property could not be subjected to the payment of a claim until it has had an opportunity to defend an action which, when reduced to judgment, could be satisfied out of its property, and hence, it is a necessary party to a complete determination of the rights of the parties responsible for the tort which is the basis of the plaintiff's action. The receiver, in his official capacity, is liable as the wrong doer, and the railway company responsible because it has assumed that liability. Any action against either can only be maintained by the plaintiff by proving the tort, and his right to recover in this respect rests upon the same ground as against each. We do not think there is any misjoinder, either of causes of action or defendants.—*Knott v. D. & S. C. Ry. Co.*, 84 Iowa 462.

It is also contended by counsel for appellant railway company, that the district court was without jurisdiction as to that corporation. This claim is based upon the assumption that because the railway company acquired the property under the terms and conditions of a decree entered by the federal court, that the jurisdiction of that tribunal with respect to liabilities imposed by such decree, was exclusive. The decree appointing the receiver expressly provided that he might be sued in any court of competent jurisdiction, or the claimant might, at his election, file an intervening petition in the cause, and have his demand adjudicated in the court having jurisdiction of the receiver. It further provided that

judgments obtained against the receiver in the state courts not appealed from, and judgments against the company which the receiver, by the terms of the order appointing him, was required to pay, and not appealed from, should be audited and allowed by the receiver as of course. It further provided that suit might be brought against the receiver in any court of competent jurisdiction without an application by the plaintiff in such suit to the court appointing the receiver for leave to do so. Further than this, there is an act of congress which specially provides that the receiver of any property appointed by any federal court, may be sued without the previous leave of the court appointing him. It thus appears, not only from the terms of the decree, but from the act of congress, that suit could be maintained against the receiver in the state court, and it certainly would not be logical to hold that the railway company, which was not only a proper, but a necessary, party to a complete adjudication of the rights involved, could not be joined in that same action. By the decree the railway company assumed the obligation sued upon in this action, and the only limitation imposed upon that liability, was that suit therefor must be brought within the period allowed by the statute of limitations of the state for the commencement of actions of this character. The decree does not state in what court such action should be brought. If it was the intention of the court, if it had the power to do so, to require actions against the railway company to enforce the liability which it assumed, to be brought in the federal court, the decree would certainly have so recited. This action does not pertain to the administration of the affairs of the company for which the receiver was originally appointed, but is brought to enforce a liability on the part of the receiver which the railway company assumed as a purchaser under

the direction of the court appointing the receiver. That this liability may be determined by any court having jurisdiction of the company and subject-matter, is clear.   There is no reason advanced why the state courts may not construe the force and effect of a decree entered by the federal court, as well as the court directing such decree.

The judgment of the district court is affirmed.

*Affirmed.*