MARY STRUNKS, ADMINISTRATRIX OF JOHN M. STRUNKS, v. JOHN B. PAYNE, DIRECTOR GENERAL OF RAILROADS, AND SOUTHERN RAILWAY COMPANY.

(Filed 13 December, 1922.)

1. **Railroads—Employer and Employee—Master and Servant—Negligence —Sufficient Help—Evidence—Questions for Jury—Trials.**

In an action to recover damages for the negligent killing of plaintiff's intestate by the defendant railroad company, there was evidence tending to show that the intestate, in the course of his employment, had applied the brakes on two cars that had been "shunted" onto a sidetrack from the defendant's freight train, and that then the defendant's train "shunted" another car onto this track that came in contact with those to which the plaintiff had applied the brakes, connecting the automatic couplings so that the three cars, instead of remaining stationary, began to run back down grade; that the intestate got back upon the car and used a "brake stick" as a lever, which was fixed within the spokes of the brake wheel, for additional power, and upon the breaking of this "brake stick," the intestate was thrown between the cars to his injury and resultant death, there being no other employee than the intestate to act as brakeman under the circumstances: *Held*, sufficient evidence upon which the jury could find that the service required for stopping the cars under the circumstances was more than the intestate could singly perform with reasonable safety; that defendant had negligently failed in its duty to furnish him sufficient help, and that this negligence was the proximate cause of the intestate's death.

2. **Same—Assumption of Risks.**

A brakeman on a freight train assumes the risks of his employment that are incident thereto and obvious, but not such as are caused by the negligence of the railroad company, or its employees, for whose acts it is liable, under such circumstances that the employee may not reasonably anticipate in time to avoid the result of an injury thereby caused, the rule

not applying that the servant assumes the risk by remaining in the service after he knows it, or it is obvious, and he appreciates the danger arising from it.

**3. Same—Rules of Employer.**

A rule of a railroad company that its employees shall not use a "brake stick" intended to be inserted between the spokes of the brake wheels for stopping its freight cars will not alone bar the recovery of such employee in his action to recover damages for the alleged negligence of the defendant railroad company when the rule has not been enforced, but habitually disregarded, if the use of the "brake stick" was reasonably required under the circumstances.

**4. Same—Defects—Instructions.**

Under the evidence in this case, *it is held,* that the defendant railroad company could not reasonably object to a charge of the court instructing the jury that, where an employee knows of a defect that has caused the injury complained of, and appreciates the risk and the danger attributable to it, and continues in the employment without objection, or obtaining from his employer, or representative, an assurance that the defect would be remedied, the employee assumes the risk, even though it arises out of his employer's breach of duty, as the instruction is in its favor, if erroneous.

**5. Damages—Statutes—Federal Employers' Liability Act—Compensation —Negligence—Wrongful Death—Present Value—Railroads.**

The measure of damages under the Federal Employer's Liability Act for the negligent killing of plaintiff's intestate, an employee of the defendant railroad company, is for "compensation" to the legal dependents, to be computed at the present cash value of the future benefits of which the beneficiaries were deprived by the death, making adequate allowance, according to the circumstances, for the earning power of money.

**6. Appeal and Error—Objections and Exceptions—Instructions—Exceptions — Damages — Present Value—Negligence — Wrongful Death— Federal Statutes—Federal Employers' Liability Act.**

A charge of the court upon the measure of damages to be given to the legal dependents of an employee negligently killed by the defendant railroad company under the provisions of the Federal Employers' Liability Act, that omits from the jury's consideration the present value of the future benefits that the legal dependents had been deprived of by the death, permits a recovery beyond that allowed by the statute, and an exception thereto presents the error on appeal without the necessity of a special request confining the recovery within the proper limits, there being but one legal principle involved and erroneously stated, which makes the error positive or affirmative, it being a failure to state the applicable principle correctly, and not a mere omission to charge as to some special or particular phase of the case.

**7. Courts—Practice—Federal Courts—State Courts.**

*Semble,* the Federal courts follow the rules of practice in the state courts holding an exception to the charge is sufficient on appeal, without a request for instruction, when the charge is of itself an erroneous statement of the measure of damages to be awarded by the jury for a wrongful death, in this case the negligent killing by a railroad company of its employee.

**8. Appeal and Error—New Trials as to One Issue—Damages.**

> There being no error upon the issues of negligence, etc., committed by
> the trial .court in an action against a railroad company for the alleged
> negligent killing of plaintiff's intestate, but only upon the issue as to the
> measure of damages, a new trial· upon that issue alone is ordered on this
> appeal.

APPEAL by defendants from *Long, J.,* at March Term, 1922, of
GUILFORD.

This is an action by plaintiff, as administratrix of her husband, to
recover damages for his death caused by the alleged negligence of the
defendant Southern Railway Company. · It was admitted that he was
killed 9 November, 1920; that the plaintiff is the widow and adminis-
tratrix of the testator, and that he also left surviving him three minor
children.　The jury found upon the issues submitted that the plaintiff's
intestate was killed by the negligence of the defendant railway company,
as alleged in the complaint; that he did not assume the risk of being
injured, and assessed the damages to the widow at $10,000; to his infant
daughter, Margaret, 7 years of age, at $6,000; to his infant son, Marvin,
5 years of age, at $7,000, and to his infant son, Howard, 2 years of age,
at $7,000.　Judgment accordingly.

It appeared in the evidence that on the morning of 9 November, 1920,
the intestate was a member of a train crew of the defendant's railroad
in charge of L. M. Carr, conductor, who took out from Greensboro a
train of freight cars, 28 or 29 in number, to a point on the belt line of
the defendant, serving several manufacturing establishments, known as
the Finishing Mill, where said cars were switched, classified, and dis-
tributed.　There are several tracks branching off from this belt line and
used for this purpose.　One of these is known as the pass track, near a
public highway, and is the one on which intestate was killed.

When this train of cars reached a point on the belt line near the said
pass track the engine was pushing them in a general easterly direction.
One car was put upon the main or belt line.　Then two gondola cars
together, loaded with sand, and each weighing 65 to 75 tons, were kicked
or shunted some distance up on the steep grade of the pass track;
Strunks, in the performance of his duty as brakeman, set the brakes on
these two cars when they ceased rolling up the grade on the pass track;
then a box car of lime (weighing 35 tons) was kicked or shunted up the
grade of the pass track with sufficient force and violence to strike
one of the gondola cars, and coupled with it automatically.　The effect
of this impact was to jostle the two gondola cars and to start all three
cars rolling down the grade.

This created an unexpected emergency.　When the cars began to roll
down, Strunks was on the ground, where it was his duty to be, and it
was his duty to stop the cars.　In order to do this he had to go on top

of the car to get to the brakes. He ran up the ladder of the box car and applied the brakes on that car, using the brake stick; there was nobody there to help him and nobody on the two gondolas. Strunks was the only brakeman on the cars. In order to stop the cars with only one brake, he would have to apply enough pressure on this brake to stop all three of them, and the brake stick broke, which it seems caused his fall to the ground and his subsequent death.

The box car of lime was kicked up the grade with more force and violence than was perhaps intended, and, not being under the control of any one and with no brakeman on it, this was doubtless the initial cause of the tragedy which followed.

When the three cars began to roll down the grade Strunks was on the ground, near where, on the opposite side, was the conductor Carr. Strunks ran up the ladder of the box car and applied the brakes to that. These brakes were on the end of the box car which was next to the gondola cars. He fell from this place, between the box car and the first gondola. The truck of the gondola which followed the box car passed over him. Witness Carr heard Strunks apply the brakes, heard a sound as if something had broken, then saw Strunks' feet, saw him when he struck the ground. He fell on the side opposite to the witness.

The defendant in his answer states that Strunks was using the brake stick at the time that the stick broke, which caused him to become unbalanced and to fall from the car, being thrown under the car and killed. It was in evidence that a brake stick is like a pick handle, reduced to a suitable length, to be used as a lever, which, when inserted in the brake wheel (which is made like the steering wheel of an automobile) enables the brakeman to apply a greater degree of pressure than would otherwise be possible. It was in evidence that the defendant had a rule forbidding the use of brake sticks, but, nevertheless, that they were in universal use, and had been for at least 16 years; that there is much work required of brakemen which cannot be done without the use of brake sticks. The conductor in charge of the train knew that Strunks was using a brake stick, and another brakeman testified that he was familiar with and had worked on this particular grade; that he used a stick there, and that to control the cars on this grade it was necessary to use a brake stick.

The conductor, Carr, testified that he did not inspect the brakes, but there was nothing to indicate that the brakes were in bad condition up to the time they started to roll back, that is, when they were struck by the box car and jostled or jarred. Strunks had applied the brakes on these cars, and if in good condition they would have held under the impact.

There was verdict and judgment thereon against the defendant, from which it appealed.

*S. B. Adams and R. C. Strudwick for plaintiff.*
*Wilson & Frazier for defendants.*

WALKER, J., after stating the case: It appears that there was sufficient evidence in the case to warrant the jury in finding that the task of Strunks on this occasion was beyond his power to perform alone with reasonable safety; that the defendant had failed in its duty to furnish sufficient help. If so, this was actionable negligence, provided such failure was the proximate cause of the death. *Pigford v. R. R.,* 160 N. C., 93. That case also holds that the doctrine of the assumption of risk relates to the servant's knowledge of the ordinary risks incident to his employment, and which he is presumed to know—but that extraordinary risks created by the master's negligence, if he knows of them, will not defeat a recovery unless the danger to which he is exposed is so obvious and imminent that the servant cannot help seeing and understanding it fully, and he fails under the circumstances to exercise that degree of care for his own safety which is incumbent upon the ordinarily prudent man.

The defendant was negligent in kicking or shunting these cars up the steep incline of the pass track without any one in position to control their movements—the cars being shunted and not under control, violently struck the two cars already on the pass track and started all three of them rolling down the grade. This was the initial cause of this occurrence, and was negligence. *Moore v. R. R.,* 179 N. C., 641.

Notwithstanding the defendant had a rule forbidding the use of brake sticks by brakemen, it was in evidence that this rule had been disregarded for more than 16 years, and that all brakemen had for many years habitually used brake sticks, to the knowledge of defendant; that defendant constantly required brakemen to do work which could not be done without their use, and that on this particular grade, in doing the work required of Strunks, the use of a brake stick was necessary. Under these circumstances the existence of the rule cannot exculpate the defendant. *Biles v. R. R.,* 143 N. C., 79.

The defendant insists that it was error to refuse to nonsuit, or to instruct the jury that if they believed the evidence to answer the first issue "No"; and further, that it was error for the court to refuse the prayer for an instruction, viz.: "If the jury believed the evidence they should find that the plaintiff's intestate assumed the risk incident to his employment." We do not think that upon this evidence the court committed any error in these respects.

The court charged the jury: "When the employee knows of the defect and appreciates the risk and danger attributable to it, then if he continues in the employment without objection or without obtaining from the employer, or his representative, an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of

the master's breach of duty." We do not see how the defendant can complain of this instruction.

This case was brought under the Federal Employers' Liability Act, and the rule of the Federal Court and not of the State court controls as to the assessment of damages.

Upon the other question, as to the assessment of damages under what is termed the "present value" rule, it is unnecessary for us to say very much, as the proper rule, and the one, therefore, that we should follow, was stated by the Supreme Court of the United States in the comparatively recent case of *Chesapeake & Ohio R. Co. v. Kelley,* 241 U. S., 485 (*S. c.,* 60 L. Ed., p. 1117) ; and *Same Railroad Co. v. Gainey,* 241 U. S., 494 (*S. c.,* 60 L. Ed., p. 1124), as follows: "The present cash value of the future benefits of which the beneficiaries were deprived by the death, making adequate allowance, according to the circumstances, for the earning power of money, is the proper measure of recovery in an action against an interstate railway carrier under the Employers' Liability Act of 22 April, 1908 (35 Stat. at L., 65, ch. 149), as amended by the act of 5 April, 1910 (36 Stat. at L., 291, ch. 143; Comp. Stat. 1913, sec. 8662), for the benefit of the widow and dependent children of an employee killed while engaged in interstate commerce."

The charge of the court in this case is contrary to the rule as there declared by the highest Federal Court, and proper exception was taken thereto in this case.

If a judge attempts to state the rule of law applicable to the case, he should state it fully, and not omit any essential part of it. The omission of any material part is a fatal error, and it is an affirmative or positive error. The "present value" of the future benefits which his widow and children would have derived by a continuance of the life of the person in question would seem clearly to be an essential part of the rule of the statute as to the damages which may be recovered, and not the sum total of the benefits as they may accrue in the future, because the amount of the latter are to be paid now. The rule of damages, as charged by the court, did not follow the Federal statute, as the latter provides only for "compensation," while the rule as given to the jury by the court would more than "compensate" the beneficiaries, as they would receive all at once, or *in solido,* and not as the benefits severally accrue in the future, which would necessarily be more than the statute contemplated should be paid to them, as the sum total of all the benefits, if received as they may accrue hereafter, would plainly be less than the payment of all of them immediately without any abatement, or discount so as to reduce them to the present value of the said future benefits. Manifestly the Congress intended only the present worth of the accruing benefits by the use of the language in the statute. Any other construction would result in giving the beneficiaries more than the fair and reasonable compensation provided for in the Federal statute, for without being

kept within the proper limit, the jury could, at least, give them more than the present worth or value of the accruing benefits, being unrestrained, and more than likely they would do so, and given ample opportunity and free range for favoring the beneficiaries beyond their legal deserts, it is more than probable that they did so. But apart from this consideration, it is plain that the statute intended to limit the jury to a fair and reasonable compensation, to be estimated by them in view of the fact that the whole amount or aggregate of the several benefits will be paid presently, and not the several amounts successively as they may accrue. No special request for an instruction was required by the law, or by well recognized procedure, in order to entitle the defendant to such an instruction, as that is undoubtedly an essential and material part of the rule prescribed by the statute, and the judge should have charged it voluntarily and without being urged to do so by a special prayer.

In the *Kelly case, supra,* the Court said "that, where future payments are to be anticipated and capitalized in a verdict, *the plaintiff is entitled to no more than* their present worth, is commonly recognized in the state courts," citing among many cases the following from this State, namely, *Poe v. R. R.,* 141 N. C., 525, 528; *Benton v. R. R.,* 122 N. C., 1007, 1009; *Johnson v. R. R.,* 163 N. C., 431, 452 (Anno. Cases 1915 B, 598).

Statutes similar to the one now being considered have been construed by the courts of this country in the different state jurisdictions, and with substantial uniformity, to the effect that for the cogent and convincing reasons stated in those cases they only allow the "present value" of future benefits from the continuance of the life that has negligently been taken. We fully considered the same question in *Johnson v. R. R.,* 163 N. C., 431, and *Fry v. R. R.,* 159 N. C., 357. In the *Johnson case, supra,* it is said: "In an action for injuries by negligence, such as this one, the plaintiff is only entitled to recover the reasonable *present value* of compensation for his diminished earning capacity in the future, and not the whole difference between what he would be able to earn in the future, but for such injury, and such sum as he would be able to earn in his present condition. *R. R. v. Paschall,* 92 S. W., 446. Where future payments for the loss of earning power are to be anticipated by the jury and capitalized in a verdict, the plaintiff is entitled only to their present worth. *Goodhardt v. R. R.,* 177 Pa. St., 1. The damages to be awarded for a negligent personal injury resulting in a diminution of earning power is a sum equal to the *present worth* of such diminution, and not its aggregate for plaintiff's expectancy of life. *O'Brien v. White,* 105 Me., 308. The rule, as we see, may be stated with varying phraseology, but it all carries the same idea, that the estimate should be based upon the present value of the difference between plaintiff's earning capacity (now and then), and not the total difference caused

by the injury.   The rule is supported by many authorities in this and other jurisdictions.   *Pickett v. R. R.,* 117 N. C., 616; *Wilkinson v. Dunbar,* 149 N. C., 20 (opinion by *Hoke, J.*); *Benton v. R. R.,* 122 N. C., 1007; *Watson v. R. R.,* 133 N. C., 188; *R. R. v. Carroll,* 84 Fed. Rep., 772; *Fulsome v. Concord,* 46 Vt., 135; *Kenny v. Folkerts,* 84 Mich., 616.   In *Pickett v. R. R.,* 117 N. C., 616, a similar instruction was held (opinion by *Avery, J.*) to be objectionable, because 'it left the date which should be the basis of the calculation, to say the least, uncertain, if the language was not susceptible of the construction that the net income would be estimated as of the period when those dependent on him would have realized the benefit of his labor had he not come to an untimely end.'   It is there said that the jury should be told that it is the *present value* of the net earnings or income, the rule being stated succinctly and clearly in the seventh headnote of the case.   The identical rule is laid down in *Benton v. R. R., supra* (opinion by *Clark, J.*), citing *Pickett's case, supra; Burton v. R. R.,* 82 N. C., 504; *Kesler v. Smith,* 66 N. C., 154.   This is not merely the just and reasonable rule, where all the damages are to be awarded and paid presently, and not as they accrue in the future, but it is the only one admissible under the statute, and it is said in *Benton's case, supra,* to have been established by the precedents.   Any other principle, if adopted, would enable a plaintiff to recover more than could possibly be earned, as no man realizes at once the full earnings or accumulations of a lifetime."

The courts in the different jurisdictions have consistently agreed as to the proper measure of the damages to be recovered in such cases, and as to the "present value" rule being the correct one, under the terms of the statutes applicable to this class of cases, and it will be found that they consider the "present value" of the benefits or accumulations which would have been realized by the deceased person had he survived, as an essential or material, *and indeed an inherent* part of the rule of the statute as to damages.   The omission of it in the instruction of the court must, therefore, be an affirmative error which vitiates the charge.

The view of the case here presented and insisted upon relates to the same point, the measure of damages, as the one in *Ala. R. Co. v. Carroll,* 84 Fed. Rep., 772, where it was held that "the measure of damages for an injury depriving a plaintiff of his earning power is not the amount he might probably earn during his expectancy of life, but the present value of such earnings."   That case was commenced in the Circuit Court of the United States for the Northern District of Alabama, where there was a verdict and judgment therein for the plaintiff, and carried by appeal to the U. S. Circuit Court of Appeals for the Fifth Circuit, where the judgment was set aside and a new trial awarded because of a charge upon damages similar to the one in our case.   In other words, it

was a Federal Court of Appeals passing upon this question of damages, and it lays down the rule obtaining in those courts upon a similar question. It cites, as one of the authorities in support of the rule it applied, *Railway Co. v. Farr,* 6 C. C. A., 211 (56 Fed., 994), and says further in the opinion by *Justice Pardee:* "To this part of the charge the plaintiff in error duly excepted, and the foregoing remarks of counsel and the charge of the judge in relation to damages are assigned as error. The remarks of counsel stated an incorrect method of arriving at the measure of damages, were unfair, and tended to mislead the jury, and there was error in permitting the same to go to the jury. In *Railway Co. v. Farr,* 12 U. S. App., 520, 528; 6 C. C. A., 211, and 56 Fed., 994, in a similar case, exactly the same error was committed. In relation to it the learned judge announcing the opinion of the Court said: 'This was a manifest error. The present value of the earnings of 40 years to come, if absolutely assured, is much less than 50 per cent of their amount, at any rate of interest that prevails in the Indian Territory, and when it is considered how uncertain these earnings are, how many chances of disability, disease, and disposition, condition the probable earnings of a young man, the rule announced is absurd. Nor was the vice of this argument, or of the court's approval of it, anywhere extracted in the general charge. The judge contented himself with the harmless remark upon this branch of the case that if the jury found for the plaintiff they should allow such a sum as would compensate him for his pecuniary loss sustained, or that he would hereafter sustain, by reason of the disabilities caused by his injuries.' "

It must be noted carefully that the decisions in the *Carroll case, supra,* and in the *Farr case, supra,* just cited, were not controlled by the construction of any statute in the State giving an action for death caused by negligence, but were decisions in cases to recover damages for personal injuries caused by negligence wherein the plaintiff sought to recover *inter alia* damages for loss of physical and mental power which would extend into the future, or common-law damages, and the courts held it to be a general and uniform rule in all cases to allow only the present value of benefits, which would have accrued in the future, if the party had not been incapacitated by the negligent act of the defendant, or if those benefits had not been lost, if death had not been caused by the same kind of act. It was a general rule, the principle of which was applicable to all like cases, whether founded on the common law or on a statute, for it was the rule of reason, and when the reason is the same, the law is the same (*ubi jus ibi remedium*).

There was but a single proposition contained in the instruction of the court to which exception was duly taken, and where this is the case, the exception has the effect, in law, of denying the correctness of the single

instruction. This is the rule of all appellate courts, and it could not well be otherwise. It was not necessary, as assumed, that appellant should have gone further and stated that his exception was based on the incorrectness of the single instruction as given, for this is most plainly implied, there being but one instruction. It is settled that where there is but one instruction in the charge of a court, the appellant complies with the requirement as to exceptions and the assignments of error, by a single and general exception to the charge as given. What more could he say? And this is so as to an exception to a judgment, and there are various other illustrations of it in procedure and practice. The instruction of the court in this instance induced the jury to give damages upon a wrong basis—not the one prescribed by the statute, and it was calculated to do so. It was a positive error in failing to lay down the rule, as fixed by the statute and required no prayer to guide the court and jury in applying the right principle.

We may as well, in this connection, refer to the fact that neither *R. R. Co. v. Kelly,* 241 U. S., 485, nor *R. R. Co. v. Gainey,* 241 U. S., 494, held, or stated, that a prayer was necessary to raise the question as to the error or insufficiency of the instruction as to damages under the act. It is simply said in the *Kelly case, supra,* by *Justice Pitney* (60 L. Ed., bottom p. 1122) : "So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded." And again, at p. 1123 : "Where future payments are to be anticipated and capitalized in a verdict (that) the plaintiff is entitled to no more than their present worth is commonly recognized in the state courts," and he cites numerous state cases and the following United States cases at p. 1124 : *St. Louis, etc., R. Co. v Needham,* 3 C. C. A., 129; 10 U. S. App., 339; 52 Fed., 371, 377; *Baltimore & Ohio R. Co. v. Henthorne,* 19 C. C. A., 623; 43 U. S. App., 113; 73 Fed., 634, 641. We will quote from the *Gainey case, supra,* a little more fully (60 U. S. L. Ed., at p. 1125) : "The only question raised relates to the method adopted in ascertaining the damages. The jury returned a verdict of $16,000. On appeal to the Kentucky Court of Appeals, it was insisted that this amount was grossly excessive, and was the result of erroneous instructions to the jury. It was contended that the verdict of $16,000, if placed at interest, would yield an annual income greater than the amount the widow would have received had she lived, and would yet leave her the principal to dispose of at the time of her death. The (Kentucky) Court overruled this contention on the authority of *C. & O. R. Co. v. Kelly,* 160 Ky., 296, where the same Court held that in such a case the whole loss is sustained at the time of intestate's death, and is to be included

in the verdict without rebate or discount. A reading of the opinion of the Court of Appeals in the present case (162 Ky., 427; 172 S. W., 918) makes it evident that it was only upon this theory that the Court was able to reach a conclusion sustaining the verdict. Since we have held, in *C. & O. R. Co. v. Kelly,* this day decided (241 U. S., 485, *ante,* 1117; 36 Sup. Ct. Rep., 630), that the theory is erroneous, it results that the judgment here under review must be reversed and the cause remanded for further proceedings not inconsistent with this opinion."

But in Thornton's Fed. Empl. Liability Act (3 ed.), sec. 199, pp. 293, 294, it is said: *"Local state practice controls.* The practice in the state court of the locality where the action is brought prevails, both where the action is brought in a state court and in a Federal Court." This brings us to the very strong and forceful statement of the rule by *Justice Avery* in *Pickett v. R. R.,* 117 N. C., 639, for the unanimous Court: "The instruction given, *viewed without reference to the prayer of the defendant,* was objectionable in that it left the question of the date which should be the basis of the final calculation, to say the least, uncertain, if his language was not susceptible of the construction that the net income would be estimated as of the period when those dependent on him would have realized the benefits of his labor had he not come to an untimely end." This is the correct rule applicable to this and similar statutes, and, as *Justice Avery* correctly said (in *Pickett's case, supra),* the element of restriction to the present value is an essential part, even considered without regard to any request for a special instruction upon the question as to the computation of the damages.

As to the verdict and judgment awarding separate damages to each beneficiary, the mere fact that the aggregate of them amounts to $30,000 does not cure the error, as pointed out in *Central Railroad of Vermont v. White, supra,* or begin to do so. That is not the point of the objection, and has no relation to it. The separate award of damages to each of the beneficiaries is still there and the distribution will be made accordingly, and contrary to the positive rule of the *White case, supra.* 35 Supreme Court Reporter, at p. 869.

There should be a new trial on the issue as to damages, for the reasons set forth by us, which are in agreement with those stated in the decisions of the highest Federal Court on the same subject, as well as by the overwhelming weight of authority in the state jurisdictions and the lower Federal courts, which are entitled at least to some consideration, as it seems to us.

The case of *Jones v. R. R.,* 176 N. C., 260, has no bearing whatever upon the question in controversy here. It deals with entirely different questions—those not relating to the question of damages, and the proper instruction, under the Federal Employers' Liability Act in regard thereto.

But the language in the case of *In re Stone,* 173 N. C., 208, is much to the point, and also covers more than one question raised in this record, and the law is there stated very clearly.

The United States Supreme Court did not hold in *Kelley's case, supra,* that in the absence of a prayer for special instruction a charge such as the one given in this case would be sufficient, nor did it say anything like that even in substance. We have quoted above what it did say. The *Kelley* and the *Gainey cases, supra,* are decisive of this one, as to the proper rule of damages in actions arising under the Federal Employers' Liability Act, and fully sustain our view of that question.

The element as to the present value of the future benefits likely to accrue to the beneficiaries is no more an essential part of the rule under state statutes giving an action for death caused by the wrongful act of another than it is under the Federal statute, the question as to future benefits being the same, or substantially the same, in all of the said statutes. The Federal Supreme Court has not said, as we understand its rulings, that the present value rule is not the correct one, but it may have said that in some particular or individual case the court below, by its instruction, had virtually submitted that rule upon the question of damages, although it has not done so in precise or definite language, which a special prayer for instruction must have evoked from the presiding judge. If it is a part of the rule, the judge should so charge it, whether asked to do so or not, and this being so, there is no reason why the State and the Federal rule should not be the same as to this question, the statutes being substantially alike and identical in meaning, so far as this particular question is concerned.

There must be another trial, but only on the issue as to damages, and it is so ordered.

Partial new trial.