OKLAHOMA GAS & ELECTRIC CO., *a corporation* v. MYRTLE LUKERT.

(Filed January 5, 1906.)

1. PETITION—Defective Prayer in—Amount not Stated—Demurrer. Where the relief prayed for in plaintiff's petition is for a money judgment, and the plaintiff does not state the amount for which she asks judgment: Held, that such failure to state the amount for which the plaintiff asks judgment, does not of itself and alone, render the petition so insufficient as to render the same subject to demurrer on the ground that the petition does not state facts sufficient to constitute a cause of action.

2. TORTS—Death by Wrongful Act—By Whom Suit Brought. In all cases in this Territory, for the death of a husband, where such death is occasioned by the wrongful act or omission of any person, or corporation, and where it is shown that the residence of the husband at the time of the death was in this Territory, and that no personal represntative or administrator has been appointed the action is properly brought by the widow in her own name.

3. CONTRIBUTORY NEGLIGENCE—Question of Law or Fact. Where there is conflicting evidence on the question of contributory negligence, it is always a question for the jury. It is only when the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*
*B. F. Burwell, Trial Judge.*

*Flynn & Ames,* for plaintiff in error.

*T. F. McMechan,* and *Hays, Thorp & Thorp,* for defendant in error.

### STATEMENT OF FACTS.

This was an action commenced in the district court. of Oklahoma county, by the plaintiff, Myrtle Lukert, against the Oklahoma Gas & Electric Company, a corporation. In her petition the plaintiff alleges that on the 16th day of November, 1902, one George Lukert, husband of the plaintiff, was killed by the negligence of the defendant, the Oklahoma Gas & Electric Company; that no administrator, or executor, or other personal representative had ever been appointed to administer upon the estate of the said George Lukert; that about such time, and for a long time prior thereto, the above named defendant, the Oklahoma Gas & Electric Company. was a duly organized and existing corporation under and by virtue of the laws of the Territory of Oklahoma, and was at that time, and is now, the owner of, and operating an electric light plant in said city of Oklahoma City, Oklahoma Territory, for the purpose of furnishing light, heat, and power to said city, and the inhabitants thereof, and was so operating said electric light plant for such purposes on the 15th and 16th of November, 1902. The plaintiff further says that for the purpose of distributing the electric currents for the purposes aforesaid, the said defendant had wires suspended upon poles extending through and along the streets and alleys of said city, and that on said dates, the said defendant had wires

suspended on poles extending along Chickasaw street, in front of the home of this plaintiff and her said husband.

Plaintiff further says that on the same poles belonging to the said defendant, on which its wires were strung as aforesaid, and below the wires of said defendant, were the wires of the Pioneer Telephone Company, a corporation, owning and operating a telephone plant in said city of Oklahoma City, 'O. T., but plaintiff alleges that said wires of the telephone company were not charged with currents of electricity except when they came in contact with the wires of the defendant.

Plaintiff further says that on the evening of the said 15th day of November, 1902, the said defendant negligently, and carelessly permitted its said wires, suspended on said poles on said Chickasaw street, and in close proximity to the home of this plaintiff and her said husband, to become out of repair, and at said time there was being transmitted over said wires of said defendant, strong, deadly, and dangerous currents of electricity; and that by reason thereof said wires became broken between the poles on which the same were suspended, and the ends thereof fell from the position where suspended, and came in contact with the wires of the said Pioneer Telephone Company. which were suspended on said poles below the wires of the said defendant as aforesaid, and by reason thereof the wires of the Pioneer Telephone Company became charged with a heavy, deadly, and dangerous current of electricity from the said wires of the defendant, and by reason thereof, the said wires of said telephone company were burned and became broken, and the broken ends together with the broken ends of the wires of said defendant, fell to the ground and remained in contact with broken wires of

the said telephone company, and that said wires, so charged
with electricity by said wires of the defendant, remained in
said condition from said time until about seven thirty (7:30)
o'clock on the morning of the 16th of November, 1902.    That
the said defendant, or its agents, had notice on the said even-
ing of the 15th of November, 1902, of the broken and dan-
gerous condition of their said wires along and near the home
of the said plaintiff and her said husband; but that notwith-
standing said notice, the said defendant negligently and care-
lessly permitted said wires to remain out of repair, and in
said condition, and lying on the ground near said plaintiff's
house during said night until 7:30 o'clock next morning as
aforesaid, and during all of  which time said· wires were
charged with strong, deadly and dangerous currents of elec-
tricity, and were dangerous for persons residing near or trav-
ing in that vicinity on account of the liability of their com-
ing in contact therewith.

Plaintiff further says that on the morning of the said
16th day of November, 1902, and at about the hour of six
(6) o'clock A. M. on said day, while said broken wires of said
defendant and said telephone company, so charged with a
strong, deadly and dangerous current of electricity, were still
lying upon the ground near the home of this plaintiff and
her said husband, the said George Lukert, husband of this
plaintiff, he was called to go out of the front door of their
home, and on to said Chickasaw street in said city; and while
thus going in said street, and while in the exercise of due care
and caution, and without any fault on his part came in contact
with one of said broken wires, aforesaid, so charged with
strong, dangerous and deadly currents of electricity aforesaid,
and negligently left in said position by said defendant as

aforesaid, and which current of electricity entered the person of the said George Lukert whereby and by means of which he was then and there instantly killed.

Plaintiff further says that the death of the said George Lukert was caused by the negligence and gross carelessness of the agents, servants, and employees of the said defendant in leaving said broken wires, charged with said dangerous and deadly currents of electricity, in an exposed condition, where persons lawfully traveling upon said street might come in contact therewith. That by reason of the death of the said George Lukert, caused as aforesaid, this plaintiff has been damaged by said defendant, in the sum of ten thousand dollars, and costs of this suit.

To this petition the defendant filed an answer of general denial, and plaintiff filed a reply. Afterwards, by leave of court, the defendant filed an amended answer wherein said defendant admits: First, that one George Lukert was, on the 16th day of November, 1902, killed by coming in contact with the wires of the Pioneer Telephone Company, a corporation organized under the laws of the Territory of Oklahoma, and owning and operating a system of telephone wires in the said city of Oklahoma City. Defendant further admits that it, at the dates mentioned in the petition, was the owner of a line of poles and wires extending along Chickasaw street in the said city of Oklahoma City, and in front of the residence of said George Lukert, and that the telephone wires of the said Pioneer Telephone Company were strung upon the same line of poles with the wires of defendant; second, except as hereinbefore admitted, the defendant denies each and every material allegation contained in plaintiffs amended petition; third, defendant for a third defense states that the said

George Lukert met his death by reason of his own negligence, and not by the negligence of this defendant; and fourth, for a further defense, defendant states that the death of the said George Lukert was caused by the negligence of the said George Lukert himself, in connection with the negligence of the said Pioneer Telephone Company, a corporation owning the line of telephone wires with which the said George Lukert came in contact, and from which he received the deadly charge of electricity. Wherefore defendant prays that the plaintiff take nothing by her said action, and that it recover its costs herein, to which the plaintiff filed a reply, (after entitling the case and court) as follows:

"Now comes the said plaintiff, and for a reply to the answer of the defendant, denies each and every allegation in the third and fourth paragraphs of said answer."

Upon the pleadings thus formed, and the issues thus raised, the case came on for trial on the 16th day of May, 1904, being one of the regular days of the regular term of said court, a jury was empaneled, the evidence heard, and the jury after being instructed by the court as to the law, returned a verdict in favor of the plaintiff, and assessed her damages at $6000.00, and also returned special answers to twenty-nine interrogatories propounded to them by the court. Thereafter, and on the 19th day of May, 1904, defendant filed its motion to set aside and vacate the general verdict, and render judgment for the defendant on the special findings in said cause. That afterwards and on the same day, to wit: The 19th day of May, 1904, the defendant filed its motion for a new trial in said cause, which motion to vacate the general verdict and for judgment on the special findings, was overruled by the court, and exceptions saved by the defendant.

Motion for new trial was overruled by the court, and excepted to by the defendant, and the court pronounced judgment on the verdict, to which the defendant excepts, and brings the case here for review.

Opinion of the court by

IRWIN, J.:   The first assignment of error relied upon by plaintiff in error for a reversal of this case is:

"The court erred in overruling the objection of the plaintiff in error to the admission of any evidence in the case, for the reason the petition does not state facts sufficient to constitute a cause of action."

This is urged upon two grounds, marked in plaintiff in error's brief "A" and "B".   The ground indicated by the letter "B" is: "The petition of the defendant in error contained no prayer for relief or judgment."   The original petition in this case contained the general prayer for judgment against the defendant for the sum of ten thousand dollars and costs of this suit.   In the amended petition, the formal prayer for judgment was omitted, but the amended petition concluded, that by reason of the death of the said George Lukert, caused as aforesaid, this plaintiff has been damaged by the said defendant in the sum of ten thousand dollars and costs of this suit.

Plaintiff in error insists that this is a fatal defect.   That this is not a prayer for judgment; that this is an action brought for the recovery of a money judgment, and cites section 4291, Wilson's Statutes of Oklahoma, which reads as follows:

"The petition must contain: First, the name of the court, and the county in which the action is brought, and the name of the parties, plaintiff and defendant, followed by the word

"petition"; second, a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition; third, a demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and, if interest thereon be claimed, the time from which interest is to be computed shall also be stated."

Plaintiff in error insists that this being a demand for money, that the language of this statute is mandatory, and that this petition not making a specific demand for judgment, is fatal to a recovery. Under an exactly similar statute, where this question was raised, in the case of *Enos A. Hiatt, v. David M. Parker, et al.* reported in the 29th Kas. 549, the Kansas supreme court say:

"Where a portion of the relief prayed for in the plaintiff's petition is for a money judgment, but the plaintiff does not state the amount for which he asks judgment, held, that this failure to state the amount for which the plaintiff asks judgment, does not of itself and alone, render the petition so insufficient as to subject the same to a demurrer interposed upon the ground that the petition does not state facts sufficient to constitute a cause of action."

And, further on in the opinion, which was rendered by Valentine, J., the court say:

"Now, it must be remembered that the defendants do not demur to the plaintiff's prayer for relief, but only to his cause of action, and that the prayer for relief, and the cause of action are entirely separate and distinct things. Section 87, of the civil code, provides: 'The petition must contain: First, the name of the court and the county in which the action is brought, and the names of the parties plaintiff and defendant, followed by the word 'petition'; second, a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition; third, a demand of the re-

lief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and if interest thereon be claimed, the time from which interest is to be computed must also be stated."

Now it will be noticed that this section of the statute is identical with our statute on the same subject. In fact, our statute was taken from the statute of Kansas. This decision was in force and effect in that state at the time of the adoption of the statute in this Territory, and is consequently binding upon this court. It will be noticed by a reading of this decision of the Kansas supreme court, that the following section, which is section 89 of their code, is identical with our section 95, of the procedure act of our code. Section 89 of the civil code provides among other things, that: "the defendant may demur to the petition when it appears on its face; * * * sixth, that the petition does not state facts sufficient to constitute a cause of action." No authority is anywhere given to demur to the relief prayed for in the plaintiff's petition, nor do the statutes, in this case provide, as the statutes in some of the other states do, that the defendant may demur to the plaintiff's petition or complaint when the facts alleged therein show that the plaintiff is not entitled to the relief demanded; nor has the defendant in this case demurred to the relief prayed for, but has demurred only to the facts alleged as constituting the plaintiff's cause of action. It would seem, then, that the only question to be considered in this case, is whether the facts set forth and alleged in plaintiff's petition, and supposed by her, to constitute a cause of action, do in fact, constitute a cause of action; for, as before stated, we do not understand that the defendants claim that the facts as

alleged in the plaintiff's petition, and aside from the prayer for relief, are not well pleaded.

An examination of section 95, of article 8, chapter 66, of the statutes of 1903, known as procedure civil, shows that it contains exactly the same provision as that of section 89, of the Kansas code. Section 96, of the same article and chapter of our code of civil procedure, reads as follows:

"The demurrer shall specify distinctly the grounds of objection to the petition. Ulness it do so, it shall be regarded as objecting only that the petition does not state facts sufficient to constitute a cause of action."

Now in this case, the only way in which the sufficiency of this petition was questioned, was by a general objection to the admission of any evidence in the case, and in that objection, no particular defect is pointed out, and nowhere in the entire case, so far as disclosed by the record, was the attention of the court called to the fact that the petition did not state a specific prayer for relief. Therefore, under the provisions of our code, this would have been waived by the defendant in the court below, and the only effect of this objection would be to raise the question as to whether the facts as stated in the petition, constituted a cause of action. Plaintiff in error cites in support of its contention, the case of *Allen W. Green, v. Peter Dunn, et al.*, reported in the 5th Kansas, page 151. An examination of that case will show that it presents a very different state of facts from the case at bar. In that case, the judgment was reversed for the sole reason that the recovery in the case was greater than the amount prayed for in the petition. The petition of the plaintiff shows that they were only entitled to the sum of $299.08, and they ask judgment for only $229, without claiming any

interest, while the district court entered a judgment for $312.28. This the court said was error, which was undoubtedly correct, as the amount of the judgment returned and entered by the district court was greater than the amount claimed in the petition, even if interest had been added, and in that case no interest was asked for in the petition. Hence, it presents a very different state of facts, and would not be authority in this case.

The reason urged for the sustaining of the first assignment of error, and marked by plaintiff's counsel as "B", is as follows: "The children of the defendant in error should have been made parties to the action, or the case should have been brought for their benefit.

This case is brought under section 414 of article 18, of chapter 66, of the Revised Statutes of 1903, running section 4612 which reads as follows:

"That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section four hundred and thirteen, of this chapter, is or has been at the time of his death in any other state or territory, or when, being a resident of this Territory, no personal representative is or has been appointed, the action provided in section four hundred and thirteen may be brought by the widow, or, where there is no widow, by the next of kin of such deceased."

Now section 413, referred to in this section 414, reads as follows:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission.

The action must be commenced within two years.  The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Now this section 414, provides in express terms that where the residence of the person killed is in this Territory, and no personal representative has been appointed, that the action may be brought by the widow, and can only be brought by the next of kin to the deceased where there is no widow. Now the petition in this case alleges that the residence of the person killed was on Chickasaw street, in Oklahoma City, Oklahoma Territory; and that the plaintiff is his widow; that no personal representative has been appointed.  It seems to us these allegations bring it clearly within the provisions of this statute which expressly provides that such actions must be brought by the widow; and by the terms of that section, before the next of kin, which would be his children, could maintain this action, it must be made to appear that there is no widow.

In support of their contention that in this case the widow could not sue without joining the children of the deceased, for their benefit, they cite the case of *East Line and Red River R. R. Co., v. Culbertson,* 5 S. W. 820,, 68 Tex. 664; construing a section of the Texas statute.  But it will be noticed that the wording of the Texas statute is very different from ours, and for that reason, this authority is of but little weight in this Territory.  The wording of the Texas statute is as follows:

"The action shall be for the sole and exclusive benefit of the surviving husband or wife and children of the person

whose death has been so caused, and that the action may be brought by all the parties thereto, or by any one or more of them."·

They also cite *Galveston H. & S. A. R. R. Co., v. McCray, et al.,* 4 Tex. Civ. App. 1897, 43 S. W. 275; but this being under the same statute as that quoted above, would fall in the same category, and would lose much of its force as authority.

They also cite the circuit court of appeals, in the case of *St. Louis, & I. M. & S. R. R. Co. v. Neadham,* 52 Fed. 371, 3 C. C. A. 129. But an examination will show that the statutes of Missouri differ materially from our statutes. The statutes of Missouri, section 2121, under the head of damages for injuries resulting in death in certain cases, when, and by whom recoverable, may be sued for, and recovered, provided: First, by the husband or wife of the deceased; or second, if there be no husband or wife, or he or she fail to sue within six months after such death, then by the minor children of such deceased. So it will be seen that under the provisions of the Missouri statute, which was the authority under which this latter case was brought, that the husband, or wife, if living, must sue within six months, or they waived the right to sue, and the action must be brought by the minor children, or next of kin, and the record in that case failed to show that the action was brought within six months; and in this it differs materially from our statute. But it seems to us that this contention cannot be maintained under the plain, unequivocal provisions of our statute, which provides in express terms that the case can be brought by the widow, and can only be brought by the next of kin where there is no widow. But we think that this question of a defect of parties plaintiff is

not in this record, because we think that the defect, if such a defect exists, has not been properly saved by plaintiff in error. This question was not raised by the pleadings. The record shows that the defendant in the court below, demurred to the petition on various grounds, among which was, "that there was a defect of parties defendant, in that plaintiff in error alleges that the Pioneer Telephone Company should have been made a party defendant, but nowhere, in the entire proceedings, as shown by the record, was any question raised, or the court's attention called in any way, either by any pleading in the case, or by the motion for new trial, to a defect of parties plaintiff. Section 4293, second volume Wilson's Statute, in setting out the grounds of demurrer, says: "5th: That there is a defect of parties plaintiff, or defendant," and section 4295 provides: "When any of the defects enumerated in section ninety-five do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same." * * *

Now it will be borne in mind that running section 4293, of Wilson's Statute, is identical with section 95 of the civil procedure act. The record shows that the plaintiff in error filed a demurrer to the original petition, setting up as grounds therefor: First, failure of the petition to state a cause of action; and second, a defect of parties *defendant,* and they set up as a reason for this second ground of demurrer, to wit: defect of parties *defendant,* that the Pioneer Telephone Company should have been made a party defendant, but nowhere in this record do they raise any question as to defect of parties plaintiff. This demurrer will be found on page 6 of the record. This demurrer was overruled by the court. The

plaintiff filed an amended petition, to which the defendant did not file a demurrer, but filed an answer which was a general denial, and nowhere in the record is there any intimation on the part of the defendant in the court below that there was a defect as to parties plaintiff. Under the plain provision of our statute, when this objection was not raised by demurrer or by answer, it was waived by the defendant, and cannot now be set up for the first time in this court by the plaintiff in error.

The second assignment of error is that the court erred in refusing to give to the jury the peremptory instructions requested by the plaintiff in error, because first, the evidence and special findings of fact disclose that there was an intervening, efficient cause which was the proximate cause of the accident and without which the accident would not have occurred, and second, the facts in the case being undisputed, the question of contributory negligence became one of law.

It is urged in support of this contention that the evidence shows that the Pioneer Telephone Company has strung its wires upon the poles of the plaintiff in error without permission, and that plaintiff in error had no notice of the actual conditions which existed at the place of the accident at the time the same occurred, and it is claimed that the negligence of the Pioneer Telephone Company was the proximate cause of the injury. Now while this is to a certain extent true, it does not appear that the fact that the Pioneer Telephone Company had strung its wires upon the poles of the plaintiff in error without permission, could not have been known to the plaintiff in error by the exercise of reasonable care and caution and a proper circumspection of its line of poles and wires. Now we take the proposition of law to be well set-

tled that a party is chargeable not only with what he actually knows about the condition of things under his charge, but is chargeable with such knowledge as he could reasonably be expected to obtain from a reasonable degree of care and caution, and proper circumspection in the control and management of his business. Numerous authorities are cited to show that the true rule in determining what is proximate cause, is that the injury must be the natural and probable consequence of the negligence—such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong doer as likely to flow from his act. Such is the rule laid down in the case cited by plaintiff in error, in the case of *Hoag v. Lake Shore, etc. R. R. C.*, 85 Pa. State 293, and the Indiana supreme court in the case of *Pennsylvania Company v. Whitlock*, 99 Ind. 16, 50 Am. Rep. 71; cited by plaintiff in error. In this latter case, it is said:

"The damages for which a party is, and upon principle ought to be, liable, are those which are the natural or necessary consequence of his wrongful act but where some other agency intervenes and extends the injurious effects of the wrongful act beyond the range of its natural or necessary consequences, and beyond what could ordinarily have been anticipated, the party originally at fault is not responsible for such additional injurious effects," and a long line of authorities are cited to the same effect.

Now applying this principle to the case at bar, would the plaintiff in error be liable for the death of the husband of defendant in error as shown by the evidence? The evidence in this case shows that the wires of the telephone company were extended on the same poles as the wires of the electric light company, the wires of the telephone company being below the wires of the electric light company, but both on

the same poles.  The proof shows that the telephone wires became broken and curled up upon the ground; that the electric light wires were also broken, and that both wires were emitting sparks and flashes of electricity for several hours. The natural presumption would be that the wires of the electric light company became broken first, and came in contact with the wires of the telephone company, so the cause of the breaking of the telephone wires was the breaking of the electric light wires.  The wires of·the telephone company were not connected with the wires of the electric light company, and were harmless, because they were not charged with electricity.  The proximate cause of the death of the husband of the defendant in error was the volts of electricity that passed  from the wires and  into the body of  the deceased. The electricity was communicated from the wires of the electric light company to the wires of the telephone company, and it was only when the wires of the telephone company became charged with electricity that they became dangerous. Now this being true, it seems to us, as a reasonable conclusion, that the proximate cause of the injury was not the defective condition of the telephone wires, because their defective condition could have existed without any injury or death having occurred, and it is only when the electric light wires became defective, and came into contact with the telephone wires, and charged them with heavy currents of electricity, that the telephone wires became dangerous.  Now if the fact that the wires of the telephone company were placed upon the poles of the electric light company, in such close proximity to the wires of said electric light company as to make the same dangerous, or liable in case of storm or the sagging of the wires, to come in contact with the wires of the said elec-

tric light company, and to become burned off, and drop to the ground, and when so burned off and dropped to the ground to become charged with a deadly agent, like electricity, and thus become dangerous to the lives of people passing, and, this condition of things existing, and by the exercise of proper care and caution and circumspection of its lines of poles and wires the plaintiff in error, the electric light company, could have ascertained this fact, then they are charged with notice of the dangerous condition of their poles and wires, in consequence of this unauthorized act of the telephone company and they cannot be excused on the ground alone that the act of the telephone company in putting their wires upon the same poles was without their consent and unauthorized, for by the exercise of reasonable care and circumspection in the management of their own wires and poles they could have discovered this, and prevented it. Now under the light of the authorities cited, it is held that the electric light company in this case would only be chargeable for such damages as were the natural and probable consequences of their negligence in allowing their wires to be so constructed and remain in close proximity to the telephone wires. Now as to persons who are versed in the use of electricity, and the management of electric currents along wires in a city like Oklahoma City, as we have a right to presume that this company being engaged in that business were familiar, might it not be reasonably expected that where wires are placed in close proximity like these telephone wires were, that it would be dangerous, and that the consequences would be just what the evidence shows they were in this case? It seems to us that this would be one of the natural and probable consequences of such negligence as the evidence shows the electric light com-

pany to have been guilty of, in allowing the close proximity
of these wires, or in not properly ascertaining the condition
of their own wires at and about the place of this accident.
Now the evidence in this case shows that these electric light
wires were down from early in the evening of the 15th until
the morning of the 16th, about seven o'clock, at which time
Lukert was killed.   Now reason would dictate that people
who are entrusted with, and in constant use of as dangerous
an agency as electricity, conducted along wires through a
thickly populated city in such deadly currents as the evi-
dence shows was in this case, should be held to a higher degree
of caution, and a more rigid inspection of their plant and
wires, and to a more strict supervision of their business than
people who are dealing with a less dangerous agency.   It is
in evidence here that the electric light company were notified
that their wires were down.   Their engineer, a man well
versed in the use of electricity, should have known that wher-
ever the wires of the electric light company were down, and
the power turned on to those wires, that it was exceedingly
dangerous, and by the simple turning of a lever he could
have disconnected the engines, turned off the current, and
rendered these wires harmless; but the evidence shows that
for at least twelve hours they wholly failed, refused, and neg-
lected to take any steps to turn off that current, or render
the conditions there safe.   Now it seems to us that they can-
not escape liability by claiming that by their sufferance, at
least, some other person or company had constructed wires,
or other objects, through which the electricity from their
wires passed to the ground and caused the death of Lukert.
Suppose in place of it being the telephone wires, it had been
a private fence along or in front of Lukert's residence, or

some of his neighbors, and these electric light wires had fallen across the wire fence and charged it with a deadly current of electricity, and Lukert had placed his hand on the wire fence and been killed. Would it then be claimed that the company could escape liability or put the responsibility upon the owner of the fence? The wires of the telephone company were not the proximate cause of the death of Lukert They were merely the agency by which the proximate cause, which was the electricity from the wires of the defendant company that had become defective, was transmitted to the point where Lukert was killed. Hence we think that the plaintiff in error cannot reasonably be excused from the consequences of their own carelessness by attempting to shirk it on to the Pioneer Telephone Company. We think there is much similarity between this case and one that was tried in the supreme court of Kansas, where the opinion was rendered by Justice Brewer. This was a case where a locomotive set fire to the prairie grass along the line of its road, and the prairie grass continued to burn for a long distance, aided by a high wind, and burned up numerous stacks of hay, barns, and houses for the farmers for some distance and the court held in that case that the fire started by the engine in the grass was the proximate cause of the damage in burning up the property of the farmers along the right of way, and that neither the wind, nor the grass was an intervening agency which would prevent them from recovery from the railroad company. And, as to the question of an intervening cause in this case, which was the proximate cause of the accident, and without which the accident would not have happened, the jury were instructed as to the law on this proposition by the court, and the only criticism if any, that we would de-

sire to make to these instructions, are that they are more liberal to the defendant than it was entitled to. Instruction asked by the defendant, and given by the court, numbered eight, is as follows:

"If the wires of the Pioneer Telephone Company were strung upon defendant's poles without its knowledge and consent, then the telephone company was the trespasser upon the property of the defendant, and defendant owed said telephone company no duty except to abstain from gross and wilful injury to its property, and if, by reason of a storm, the electric and telephone wires came into contact with each other and were burned in two and the broken ends of said telephone wires, charged with deadly electric currents, fell upon the ground and killed deceased, then the defendant would not be liable."

Instruction No. 9 asked by defendant, and given by the court is as follows:

"If you believe from the evidence that the injury to the deceased could not have happened unless the said wires were so attached to the poles of the defendant, without the knowledge and consent of the defendant, and that the defendant did not have reasonable notice of the breaking of said wires and a reasonable opportunity within which to repair said break or shut off the current prior to the time of the accident, then the plaintiff is not entitled to recover, and your verdict should be for the defendant."

Instruction No. 10, asked by the defendant, and given by the court, is as follows:

"If you believe from the evidence that the wires of the Pioneer Telephone Company were attached to the line of poles of the defendant running along the street at the place of the injury, and that they were so attached without the knowledge and consent of the proper officers of the defendant, and that the deceased was killed by coming in contact with

the wires of said telephone company, and that the said de- fendant had exercised reasonable diligence in providing and maintaining a safe line of poles and wires at said place, and that the contact between the telephone and electric light wires caused said wires to burn in two, and that the defendant through its proper officers or agents did not know and could not have known in the exercise of reasonable diligence that such break had occurred, and that the wires were down, then the deceased's injuries were not the result of the defendant's negligence, and your verdict should be for the defendant."

Instruction No. 11, asked by defendant, and given by the court, reads as follows:

"In order for the plaintiff to recover, the jury must believe from a fair preponderance of the evidence that the injuries of the deceased were the direct and proximate result of some wrongful or negligent act of this defendant. And if from the evidence you believe that the deceased met his death by coming in contact with the telephone wires of the Pioneer Telephone Company, and that these wires were strung upon defendant's poles without its permission and consent, and that the accident would not have happened but for these facts, and that these telephone wires were the direct and proximate cause of the injuries, then your verdict should be for the defendant."

Instruction No. 12, asked for by defendant, and given by the court, reads as follows:

"The proximate cause of any injury is that which directly and immediately produces the injury, and where the causes which produce an injury are mingled and produced by different persons or corporations, then if there be any liability such liability rests upon that person or corporation guilty of the wrongful or negligent acts; and if in this case you believe from the evidence that the cause of the injury was a contact between the deceased and live wires of the Pioneer Telephone

Company, and if you further believe that the wires of said telephone company were charged with electricity by the defendant corporation, then the proximate cause of the injury would be a concurrent act of both of said corporations; and if you further believe from the evidence that the said wires of the Pioneer Telephone Company were wrongfully placed upon the poles of the defendant without the knowledge and consent of its proper officers, and without any notice to the defendant, then the wrongful act of the said telephone company would be the immediate cause of the injury, and under these circumstances the plaintiff would not be entitled to recover, and your verdict should be for the defendant, unless you further find that the defendant company was notified of the dangerous condition of the wires and refused to shut off the current or remove the danger.    The mere fact that the telephone company may have been a trespasser would not relieve the defendant company from shutting off the current if it was notified of the dangerous condition, but you should also take into consideration as to whether the defendant company knew of the increased danger occasioned by the telephone company attaching its wires to the electric light poles."

The court fully explained to, and properly instructed the jury as to the true rule of law concerning that subject, and the jury upon this proposition, by their special findings, and their general verdict, found for the plaintiff and against the defendant, and we are not prepared to say that their finding was not sustained by the evidence.

But the second division of the argument upon this assignment of error is that the court erred in refusing to give to the jury the peremptory instruction asked for by plaintiff in error, because the facts are undisputed, and the question of contributory negligence became one of law.    Now this question of contributory negligence is first·raised by the an-

swer of the defendant, where they allege in express terms that the cause of the death of the deceased was the negligence of Lukert himself. We take the rule to be well established that where there is conflicting evidence on the question of contributory negligence, it is always a question of fact for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.

In the case of *Continental Improvement Company v. Stead,* 95 U. S. 161, the court speaking through Justice Bradley, uses this language:

"Those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if a collision happen; and hence it will not be presumed, without evidence that they do not exercise proper care in a particular case."

In the case of *Grand Trunk Railway v. Ives,* reported in the 144 U. S. at page 408, the supreme court say, on page 417:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care' 'reasonable prudence' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such ques-

tions to the jury, under proper instructions from the court. It is their province to note the special surroundings and circumstances of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the quesiton as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

In the case of *Texas & Pacific Railway Company v. Gentry,* reported in the 163 U. S. at page 353, one of the assignments of error in that case was the refusal of the district court to give a special instruction for the defendant, which read as follows:

"You are instructed that it is the duty of an employee or any other party, about to cross a railroad track, to look and listen for passing engines, cars or trains, to ascertain whether or not same are approaching before going upon the track, and if the party fails to exercise such care he cannot recover. You are therefore instructed, that if the deceased, L. D. Gentry, by looking or listening, could have known of the approach of the engine and car and in time to have kept off the track and prevented the injury to himself, and that he failed to do so, you will find for the defendant."

And in the body of the opinion, at page 366, the supreme court of the United States say:

"It is undoubtedly true, as claimed by the defendant, that the deceased was under duty not to expose himself recklessly when about to cross the track of a railroad. In *Railroad Company v. Houston,* 95 U. S. 697, 702, this court, after referring to certain acts of negligence upon the part of a

railroad company which were alleged to have caused personal injuries, said: 'Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger.' * * *

"But the present case did not admit of, or require an instruction upon this special subject. There was no evidence upon which to rest such an instruction. As already stated, no one personally witnessed the crossing of the track by the deceased nor the running of the flat car over him. Whether he did or did not stop and look and listen for approaching trains, the jury could not tell from the evidence. The presumption is that he did; and if the court had given the special instruction asked, it would have been necessary to accompany it with the statement that there was no evidence upon the point, and that the law presumed that the deceased did look and listen for coming trains before crossing the track."

On page 368 of the opinion, the court said:

"It is sufficient to observe that the evidence touching the matters referred to by counsel was not so clear and satisfactory as to justify the taking of the case from the jury upon the issue whether the deceased exercised due care under the circumstances which attended the occasion. It was properly left to the jury to determine whether, under all the circumstances, the effect of the headlight and flat car combined was to make the situation secure and safe to one who saw the headlight, but did not see the flat car in front of the locomotive. 'What may be deemed ordinary care in one case' this court has said, 'may under different circumstances and surroundings, be gross negligence.' The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each

particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs.    When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.    It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." Citing with approval *Grand Trunk Ry. Co., v. Ives, supra.*

The presumption which obtains in the absence of proof of negligence, that is, the presumption that persons of ordinary capabilities, placed in a place of danger, use reasonable care and caution to void death or great bodily injury is a presumption that is founded on the law of nature.    We know of no more universal instinct than that of self-preservation— none that so insistently urges a party to care.    It has the strongest human motives for its exercise: the fear of pain, maiming, or death.    There are few, if any, presumptions based on human feelings or human experience that have a surer foundation than this one.

Now, from these authorities, it will be ascertained that if there was any evidence tending to show contributory negligence, and if there was any conflict of evidence on this point, it was clearly the duty of the court to submit the proposition to the jury, which was done by the court in this case, under what we think were very liberal instructions for the defendant.

Instructions number two and three, asked for by defendant, and given by the court, in our judgment was carrying the doctrine of contributory negligence fully as far in behalf of the defendant as the law would warrant.    This can be seen

by an examination of those instructions, which were in the following language:

"2.   You are instructed that before you can find for the plaintiff in this case, you must find, by a preponderance of the evidence, that the death of the deceased was the direct and proximate result of the negligence of defendant, and also that the negligence of plaintiff did not contribute thereto.

"3.   The burden of proof rests upon the plaintiff to establish by a fair preponderance of the evidence that the death of the deceased was the direct and proximate result of some negligent act of this defendant, and the burden of proof does not rest upon the defendant at any time, or in any stage of the proceedings, to show that the accident was not the result of its negligence, but this burden at all times rests upon the plaintiff."

The evidence in this case shows that the wires were down all night, and were emitting flashes of light and sparks of electricity. That about a half an hour before Lukert was killed, Guy Harkin's pony was killed by the electric light wire a few rods west of Lukert's place; that Lukert went to bed early in the evening, and did not get up until a few minutes before he was killed. There is no evidence, whatever, to show that Lukert knew that the wires had been down during the night, or that a pony had been killed previous to his getting up, or that there was any danger whatever from the wires. There is a total lack of evidence upon this point. The witness Hampton, in his testimony, saw Lukert go out from his front door and out into his yard, going towards the front gate, but his attention was called to something else, and he heard a cry and looked around and Lukert was at that time in a coil of wire in the path a few feet west of his gate. Purcell did not see Lukert until he was in the wire, and was being burned.

Mrs. Lukert heard the cry and saw him soon after he came in contact with the wires. This is all the evidence as we recollect it, upon the point of his getting in the wire. While it appears the wires had been broken all night, and emitting sparks of electricity, the witnesses Hampton, Purcell, Wineman and Mrs. Lukert, and all the witnesses who testified on that point, say that at the time, and for some time previous to the time that Lukert went out, that the hissing and sparkling of the wires had all died out, and there was nothing to notify Lukert of any dangerous condition of the wires. He went out presumably to secure his morning paper which Guy Harkins, the newsboy, had thrown there about half an hour previous, when his pony was killed.

In this case no one has testified, or knows whether Lukert actually saw the wires before he came in contact with them or not, and no one knows and no one testified whether, if he did see them, that he knew they were of a dangerous character; and under the authorities above cited, in the absence of all evidence, the court would have a right to presume that he acted with due caution and care, in the absence of circumstances or evidence to the contrary. But in this case, the trial court, in a superabundance of caution, and it seems to us, with extraordinary care to protect the rights of the defendant, has not instructed the jury that they had a right to presume that the defendant exercised reasonable care and caution in the absence of proof to the contrary, as he would clearly have had a right to do under the authorities above cited, but the court, without such instructions, submitted the entire question to the jury upon the evidence, and the jury, by their verdict and special findings, as to this proposition, have found against the defendant.

The third assignment of error is that the court erred in refusing to give to the jury instruction No. 4, requested by plaintiff in error to raise the question of contributory negligence. We have examined instruction No. four, and we think this instruction was fully covered by the instructions in this opinion above cited, and having been given at this point by the court at the request of the defendant, hence we think there is no merit in this assignment of error.

The fourth assignment of error is that the court erred in refusing to give to the jury instruction No. 27, asked by plaintiff in error, relating to the question of non-liability of the plaintiff in error for damages resulting from unusual wind or rainstorm. We think that the refusal to give this instruction No. 27, was fully cured by the giving of instruction No. 21, of the general charge, where the court instructed the jury that it was not the duty of the defendant to so construct its line of wires as to provide against storms and rains that could not reasonably be expected.

The fifth assignment of error is that the plaintiff in error was entitled to have request No. 29, relating to damages for loss of sympathy and affection given to the jury. We do not think there was any error in the refusal of this instruction, which was simply a statement to the jury of the proper measure of damages, because we think that the question of the measure of damages was fully and correctly covered by instruction No. 4, of the general charge of the court.

Assignment of error No. 6, is that the court erred in admitting evidence over the objections and exceptions of plaintiff in error as to conversations over the telephone occuring after the accident, such testimony being prejudicial, and done to unduly influence the minds of the jurors.

It will be noticed from an examniation of the record that after Lukert first came into contact with the wires, that he remained in contact with the wires for a period from half to three quarters of an hour before the current was turned off. Now from the very nature of the accident, it would be impossible for any one to tell the exact period of time that the current produced the death of Lukert. These telephone conversations complained of, were soon after Lukert had come in contact with the wire, and before the current had been turned off, and at a time when it could not possibly have been known by anybody whether Lukert was alive or not, and we presume that these telephone conversations were admitted by the court as forming a part of the *res gestae,* and we think they were clearly a part thereof, and in any event, we cannot possibly conceive how these telephone messages could have in any way produced the effect that counsel for plaintiff in error claim they did on the jury. They were simply a statement of the facts which the evidence of the case shows to be true: a notice to them that a horse had been killed, and that there was a man then entangled in their wires which were charged with electricity, and undoubtedly killed. We do not think there was any error in admitting this testimony.

In the seventh assignment of error, plaintiff in error complains of instructions Nos. 6, 7, 9, 10, 14 and 20, relating to the notice to plaintiff in error, and claim they were misleading and prejudicial. We have carefully examined these instructions, and we think they correctly state the law. The only criticism, if any, that we would make, is that they are entirely, in our judgment, too liberal to the defendant. If they are misleading and prejudicial, it is not against the interest of the defendant, but rather against the interests of the plain-

tiff, and for this reason there is no cause for complaint on the part of plaintiff in error.

The eighth assignment of error consists of a general statement that the court committed error in denying the motion of plaintiff in error to set aside and vacate the general verdict returned by the jury, and to render judgment for the plaintiff in error on the special findings. This assignment of error we think has been fully covered in this opinion, and is entirely without merit.

We have examined the record carefully, and we think that the evidence in this case shows a clear and unmistakable case of negligence, which amounts to almost criminal carelessness. There seems to have been, on the part of the plaintiff in error, at the time of this accident, a wanton and reckless disregard for the safety of the people along its lines, and we think that the verdict of the jury and the judgment of the court was just and righteous, and that substantial and exact justice has been done, and finding no error in the record, the judgment of the district court is affirmed, at the costs of the plaintiff in error.

Burwell, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.